IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

DENNIS JAMES JOHNSON,

    Plaintiff,

v.

SHAUN STANLEY,

    Defendant.

CIVIL ACTION NO.: 2:17-cv-91

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at the Federal Correctional Institution in Estill, South Carolina, filed a cause of action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), to contest certain events that occurred while he was incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"). (Doc. 1.) For the reasons set forth below, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.[1] The Court **DISMISSES as moot** Plaintiff's Motion for Court Filings. (Doc. 7.)

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A Magistrate Judge's Report and Recommendation ("R&R") provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that R&R served as notice that claims would be *sua sponte* dismissed). This R&R constitutes fair notice to Plaintiff that his suit is barred and due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the District Court will review *de novo* properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562-TWT-JFK, 2012 WL

## PLAINTIFF'S ALLEGATIONS[2]

This case arises out of a tragic accident suffered by Plaintiff while on a prison work detail.[3] Plaintiff asserts Defendant violated his Fifth Amendment procedural due process rights by misadvising him and destroying evidence relevant to his putative accident compensation claim. (Doc. 1.) On April 21, 2015, while recovering in Wayne Memorial Hospital from an accident involving an EZ-GO Cart, Plaintiff spoke to Defendant, the Institutional Safety Manager at FCI Jesup, about the accident and possible compensation for his injury. (Id. at pp. 3, 4.) Defendant informed Plaintiff that he had already filed Plaintiff's claim for compensation. (Id. at p. 4.) When Plaintiff later followed up with his claim, Defendant confirmed it had been filed and that Plaintiff would soon have a response from the prison Board of Directors.

In May 2015, Plaintiff again spoke with Defendant after not hearing back from the Board and was informed that, while his claim had been filed with the Central Office, Plaintiff would

---

5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's R&R constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond). Additionally, this R&R provides Plaintiff the opportunity to amend his Complaint to correct the deficiencies noted herein. See Fed. R. Civ. P. 15. Should Plaintiff seek to amend his Complaint, he must file the amendment within **fourteen (14) days** from the date of this R&R.

[2] The allegations set forth are taken from Plaintiff's Complaint and are accepted as true, as they must be at this stage.

[3] The Court notes Plaintiff has filed two other related causes of action, against different defendants and under different legal theories, seeking redress for the injuries he suffered while on work detail at FCI Jesup: Johnson v. United States, 2:16-cv-22 (S.D. Ga. Sept. 15, 2016), ECF No. 1. [hereinafter Johnson I] (claims under the Federal Tort Claims Act); Johnson v. Bd. of Dirs., Fed. Prison Indus. Inc., 2:17-cv-145 (S.D. Ga. Dec. 12, 2017), ECF No. 1. [hereinafter Johnson II] (claims under Bivens). The Court dismissed Plaintiff's first case, brought under the Federal Tort Claims Act, for failure to state a claim and informed Plaintiff that he must seek compensation under the Inmate Accident Compensation Program. Johnson I, at ECF Nos. 9, 11. Plaintiff voluntarily dismissed his second case after being informed he could not bring a Bivens action against the Board of Directors. Johnson II, at ECF Nos. 9, 10, 11. Plaintiff brings his third case, presently before the Court, as a Bivens action against the federal prison official involved in Plaintiff's pursuit of compensation for his injuries. As previously detailed, Plaintiff suffered severe disfigurement and permanent nerve damage to the top of his head after several improperly secured steel sheets slid off the roof of an EZ-GO Cart and hit Plaintiff in the head while on work detail at FCI Jesup. Johnson II, at ECF No. 9, pp. 2–3.

also need to file an "administrative tort claim" to be compensated for his disfigurement. Plaintiff filed this claim and also received a copy of the injury report. Thereafter, the Central Office informed Plaintiff that his work detail injury claim was not covered by the Federal Tort Claims Act and that his sole remedy was through the Inmate Accident Compensation Program,[4] a conclusion echoed by this Court in Johnson I. Upon learning the legal status of his claim, Plaintiff approached Defendant "about the misinformation that he gave me about the accident compensation claim." (Id.)

Defendant admitted that no file of Plaintiff's accident had been made, and when pressed by Plaintiff about his "lie," Defendant replied that the injurious EZ-GO Cart was not meant to be loaded with sheet metal on its roof and that doing so violated safety standards. (Id. at p. 5.) Plaintiff filed two administrative grievances against Defendant in response; one alleging Defendant falsified official documents and the other alleging due process and regulatory violations. In September 2016, Plaintiff sought photos from the day of his accident that were supposed to be kept on file by Defendant. The assistant safety manager, Mr. Fredricks, informed Plaintiff that Defendant had copies of the photos, which were sent to the Safety Office by Lieutenants Novak and Clemons. Mr. Fredricks also told Plaintiff that he was entitled to copies of the photos pursuant to policy.

After also speaking with the lieutenants, who confirmed the photos they took were sent to the Safety Office,[5] Plaintiff confronted Defendant about the missing accident photos. Defendant relayed that no one sent him any photos from the day in question and that everyone Plaintiff had

---

[4] Inmate Accident Compensation, 18 U.S.C. § 4126, regulations are codified at 28 C.F.R. § 301 *et seq*. These Regulations are internally referred to as the Inmate Accident Compensation Program rather than the "Inmate Accident Compensation Act." 28 C.F.R. § 345.62. Thus, the Court will refer to the collective Regulations under 28 C.F.R. § 301 as the Inmate Accident Compensation Program ("IACP").

[5] Plaintiff notes that he was conscious and aware when Lieutenant Novak took photographs of him following the accident. (Doc. 1, p. 5.)

spoken with was mistaken about the photos. Plaintiff then filed another administrative grievance against Defendant and eventually exhausted those remedies. Plaintiff argues that, as a "direct result" of Defendant's destruction of photographic evidence and failure to follow the accident compensation procedures, he has not received any monetary compensation for the harm he suffered. (Id.) As relief for Defendant's alleged due process violations, Plaintiff requests $7 million in compensatory damages and $11 million in punitive damages. (Id. at p. 6.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis*. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set

of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . .") (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never

suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Article III Standing

Article III of the United States Constitution limits the power of federal courts to adjudicating actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. The most significant case-or-controversy doctrine is the requirement of standing. See Georgia State Conference of NAACP Branches v. Cox, 183 F.3d 1259, 1262 (11th Cir. 1999). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Nat'l Alliance for Mentally Ill, St. Johns Inc. v. Bd. of Cty. Comm'rs of St. Johns Cty., 376 F.3d 1292, 1294 (11th Cir. 2004) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). A plaintiff seeking to invoke federal jurisdiction carries the burden to establish that he has standing to assert his claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). "There are at least three distinct forms of standing: taxpayer standing, individual standing, and organizational standing." St. Johns, 376 F.3d at 1294 (citations omitted).

To establish standing under any of these forms a plaintiff must satisfy three requirements: "(1) injury in fact; (2) a causal connection between the asserted injury in fact and the challenged action of the defendant; and (3) that the injury will be redressed by a favorable decision." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328 (11th Cir. 2013) (internal quotes omitted) (citing Lujan, 504 U.S. at 560–61). To meet the injury-in-fact requirement, a plaintiff must have suffered an invasion of a legally protected interest which is: (a) "concrete and particularized," meaning the alleged injury affects the plaintiff "in a personal and individual

way;" and (b) "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560, 560 n.1 (citations and internal quotes omitted). To be "concrete," an injury "must be '*de facto*'; that is it must actually exist." Spokeo, Inc. v. Robins, 578 U.S. ___, ___ 136 S. Ct. 1540, 1548 (May 16, 2016). A plaintiff may not proceed in federal court from the outset without establishing these three requirements.

In this case, Plaintiff seeks substantial monetary damages for Defendant's alleged due process violations for failing to adhere to the accident compensation policy and destroying evidence. (Doc. 1, pp. 5–6.) Plaintiff contends Defendant's actions have caused him to be currently denied a monetary award for an accident that occurred over two years ago. (Id.) While the Court notes Plaintiff's significant physical harm, it does not appear, based on the present allegations, that Plaintiff has suffered an injury in fact at this time from Defendant's alleged improper conduct. Plaintiff ostensibly complains of harm caused by Defendant, but Plaintiff's current harm stems from the EZ-GO Cart accident, not from any action or inaction of Defendant.

To be sure, Plaintiff does not attribute fault for the accident to Defendant, instead focusing his allegations on Defendant's actions following the accident, which Plaintiff contends has caused him to be denied monetary relief. Because Plaintiff's exclusive remedy for his work-related injuries lies in the IACP, his physical injuries themselves not establish an injury in fact for the purposes of this action, and a liberal reading of Plaintiff's complaint cannot remedy this fatal deficiency. United States v. Demko, 385 U.S. 149, 152 (1966); see also Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980) ("Demko makes clear that [the IACP] is the sole remedy against the government where the injury is work-related, and the cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job.").[6] Moreover,

---

[6] All decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

under the IACP, Plaintiff is not yet eligible for monetary rewards and will not become so until forty-five (45) days prior to his release. 28 C.F.R. § 301.303(a). Within forty-five (45) days of Plaintiff's release date, but not less than fifteen (15) days prior, he may file a FPI Form 43 Inmate Claim with the Institution Safety Manager or Community Corrections Manager for work-related physical impairments that still exist at the time of Plaintiff's release.[7] Id. Plaintiff's current ineligibility for accident compensation mandates the conclusion that he has not suffered an injury in fact at this time from Defendant's alleged misconduct. Stated another way, because Plaintiff cannot obtain compensation for his work-related injuries until his release, he has not yet been denied that compensation, and, thus, he has not suffered an injury due to Defendant's actions.

To establish an injury in fact, Plaintiff must show his alleged injury is "concrete and particularized" and also "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. On these facts, Plaintiff's injury, while particular to him, is not yet concrete because it does not exist at this time. In this sense, Plaintiff's alleged injury is not actual or imminent; rather, it is merely conjectural or hypothetical because it has not yet occurred. Analogous to an access-to-courts claim, when a litigant has not been denied his claimed remedy, or when his

---

[7] Although Plaintiff seeks present compensation, the law does not permit inmates who are injured in work-related accidents to receive accident compensation until their release. 28 C.F.R. § 301.301(a) ("*No compensation for work-related injuries resulting in physical impairment shall be paid prior to an inmate's release*.") (emphasis added); see § 301.303(a) ("No more than 45 days prior to the date of an inmate's release, but no less than 15 days prior to this date, each inmate who feels that a residual physical impairment exists as a result of an industrial, institution, or other work-related injury shall submit a FPI Form 43, Inmate Claim for Compensation on Account of Work Injury. Assistance will be given the inmate to properly prepare the claim, if the inmate wishes to file."); see also § 301.303(f) ("When circumstances preclude submission in accordance with the provisions of paragraph (a) of this section, a claim may be accepted up to 60 days following release. Additionally, a claim for impairment may be accepted up to one year after release, for good cause shown."). Therefore, contrary to Plaintiff's mistaken understanding, (doc. 1, p. 5), applicable regulations do not "authorize" monetary compensation for work-related accidents until an inmate's release. But see 28 C.F.R. §§ 301.201–.205 (allowing for payment of 75% of *an inmate's lost-time wages*, the unearned prison-work wages occasioned by a work-related injury, while an inmate is incarcerated) (emphasis added).

claimed remedy has not been prejudiced, he has yet to suffer an injury in fact and lacks standing. Lewis v. Casey, 518 U.S. 343, 356 (1996) (injury established by showing "that an actionable claim . . . has been lost or rejected, or that the presentation of such a claim is currently being prevented"); Wilson v. Blankenship, 163 F.3d 1284, 1290–91 (11th Cir. 1998) (citation omitted) (injury established by showing "evidence of [a nonfrivolous claim being deterred], such as a denial or dismissal"). Simply put, Plaintiff has not been denied accident compensation due to Defendant's alleged due process violations or suffered any legally cognizable injury. Plaintiff's accident compensation claim has neither been lost nor denied at present. Taking Plaintiff's allegations as true, Defendant has not yet injured Plaintiff because his preclusion from monetary redress while incarcerated is the result of the IACP's controlling regulations, not any alleged due process violation by Defendant. As it stands, Plaintiff may later recover under the IACP and has thus not suffered a cognizable injury due to Defendant's claimed photo destruction and reporting failures.

To the extent Plaintiff asserts injury because Defendant's alleged due process violations precluded his ability to later obtain accident compensation, Plaintiff still cannot establish an injury in fact. Plaintiff has failed to establish that Defendant's alleged misconduct has prec his claim. As noted above, Plaintiff may not bring his accident compensation claim until forty-five (45) days prior to his release. Further, Plaintiff has not plausibly alleged that Defendant's failure to properly file an injury report, or "claim" as Plaintiff puts it, has prejudiced Plaintiff's ability to obtain accident compensation upon release from prison. Such a report is not a prerequisite for redress under the IACP. Compare 28 C.F.R. § 301.105(a) (requiring work detail supervisors to, among other things, complete and forward a BP-140 injury report to the Institutional Safety Manager at the time of injury), with § 301.303(a) (requiring inmates to submit an FPI Form 43

9

Inmate Claim to the Institutional Safety Manager forty-five (45) days prior to their release in order to obtain accident compensation), and § 301.305 (compensation determinations are made on "all available evidence"), and §§ 301.309, .310 (claimants may present "any evidence" as well as witnesses in support of their claim). In short, an award under IACP is not contingent on a proper BP-140 injury report.

While IACP regulations mandate that Defendant maintain such a report, they do not condition Plaintiff's compensation on Defendant doing so. Additionally, the BP-140 injury report was eventually filed; Plaintiff received a copy of it in June 2015 and was later notified that the Safety Committee determined his injuries were work-related and compensable under the IACP. (Doc. 1, p. 4; Doc. 1-3, p. 5; Doc. 1-4, p. 5.) Moreover, Plaintiff may submit this report and any other evidence he desires, such as hospital records and witness testimony from Lieutenants Novak and Clemons, in support of his accident compensation claim at the appropriate time of his release from prison. Thus, Plaintiff has failed to plausibly allege that Defendant's failure to adhere to the injury reporting regulations prejudiced Plaintiff's claim or otherwise caused him injury in fact.[8]

Similarly, Plaintiff has not plausibly alleged that Defendant's destruction of accident photos prejudiced Plaintiff's putative IACP claim, much less already caused an injury in fact. Pertinently, compensation awards are based on Plaintiff's condition at the time of release and any residual impairment he may be suffering at that time as a result of his work-related accident. See 28 C.F.R. § 301.303(c) (*At the time of filing*, claimants must "submit to a medical

---

[8] Furthermore, while Plaintiff contends Defendant failed to follow regulations when reporting Plaintiff's injury, that alleged misfeasance alone is not a constitutional violation and is thus not a cognizable injury a part from whether it prejudiced Plaintiff's ability to later file his accident compensation claim. See Magluta v. Samples, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) ("Procedural requirements set out in the [C.F.R.] are not themselves constitutional mandates.").

10

examination to determine the degree of physical impairment. . . . In each case of visible impairment, disfigurement, or loss of member, photographs shall be taken *to show the actual condition* and shall be transmitted with FPI Form 43.") (emphases added); § 301.314(a) ("[C]ompensation shall be based upon the degree of physical impairment *existent at the time of the claimant's release* regardless of when during the claimant's period of confinement the injury was sustained. [Compensation will be denied] if full recovery occurs while the inmate is in custody and no impairment remains at the time of release.") (emphasis added). IACP regulations require photos to be taken when an accident compensation claim can be properly asserted upon release, rather than at the time of injury, [9] and compensation awards are based on Plaintiff's medical condition at the time of release. Thus, even accepting Plaintiff's allegations as true, he has not plausibly claimed that any destruction by Defendant of photos taken at the time of the accident has caused him an injury in fact at this time.

For all of these reasons, Plaintiff has failed to sufficiently allege that Defendant's actions have caused him an injury in fact. At most, Plaintiff's claims portend future and hypothetical injury, which is insufficient to establish standing. Moreover, Plaintiff has not demonstrated that Defendant's alleged due process violations have prejudiced Plaintiff's ability to bring a viable IACP claim or otherwise caused any direct injury. Accordingly, the Court should **DISMISS** Plaintiff's due process claims against Defendant for lack of standing due to his failure to plausibly claim an injury in fact.

## II.   Ripeness

Like standing, ripeness presents "the threshold jurisdictional question of whether a court may consider the merits of a dispute." Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006)

---

[9] To be sure, the IACP requires a photograph of the "machine or instrument causing the injury." 28 C.F.R. § 301.105(a). However, "an identifying description" of that machine or instrument included in the BP-140 injury report also suffices. Id.

(citations omitted). Ripeness implicates both constitutional and prudential concerns. Nat'l Advert. Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005). Due to their doctrinal overlap, ripeness and standing analyses often intermingle and overlap, making this aspect of justiciability "one of the most confused areas of the law." Wilderness Soc'y v. Alcock, 83 F.3d 386, 389–90 (11th Cir. 1996). Although overlap exists, the general distinction between these two doctrines is that standing concerns *who* may properly bring suit, while ripeness relates to *when* a suit may be properly asserted. Elend, 471 F.3d at 1205 (citation omitted). Thus, there may be standing without ripeness, as when a party alleges an injury-in-fact but has not exhausted prescribed administrative remedies. Id. (citing e.g., Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 (1938). Or there may be ripeness without standing, as when an injury is fully formed but the remedy sought would not redress the harm or the plaintiff asserts the claims of third parties. Id. (citing e.g., Linda R. S. v. Richard D., 410 U.S. 614, 617–18 (1973); Whitmore v. Arkansas, 495 U.S. 149, 151 (1990)).

In cases involving pre-enforcement review, however, the standing and ripeness inquiries may tend to converge because these claims "involve the possibility of wholly prospective future injury, not a prayer for relief from damages already sustained." Id. As shown by these cases, it is the injury-in-fact requirement of standing that most often overlaps with ripeness. "If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing." Id. Nonetheless, the ripeness inquiry essentially asks "whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court." Digital Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997) (citation omitted). This determination requires analysis of two factors: (1) the hardship that a plaintiff might suffer

without court redress; and (2) the fitness of the case for judicial decision. Elend, 471 F.3d at 1211 (citing Abbot Labs. v. Gardner, 387 U.S. 136, 149 (1967)). Where a governmental act is challenged, the issues are ripe for judicial review when the plaintiff "has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act." Nat'l Advert. Co., 402 F.3d at 1339 (citation omitted).

Plaintiff's ripeness problem is much the same as his standing deficiency. In essence, Plaintiff's due process claim against Defendant effectively seeks pre-enforcement review of his ability to obtain relief under the IACP. Thus, assuming Plaintiff's particular due process claim is cognizable in a Bivens action, a doubtful proposition in the wake of the Supreme Court's decision in Ziglar v. Abbasi, 582 U.S. ___, ___, 137 S. Ct. 1843, 1548 (May 16, 2016),[10] Plaintiff's claim is not yet ripe. As discussed above, Plaintiff has yet to suffer a "direct injury" as a result of Defendant's challenged conduct. Defendant's alleged due process violations have

---

[10] While the IACP does not necessarily foreclose a Bivens action on these facts, see Smith v. United States, 561 F.3d 1090, 1103 (10th Cir. 2009) (Bivens actions not precluded by the IACP); Bagola v. Kindt, 131 F.3d 632, 644–45 (7th Cir. 2007) (same), the Supreme Court's recent pronouncement in Ziglar may. In Ziglar, the Supreme Court reiterated that expanding the Bivens remedy is a "disfavored judicial activity" and held that a putative Bivens case presents expansion into a new context "if the case is different in a meaningful way from previous Bivens cases decided by this Court." 582 U.S. at ___, 137 S. Ct. at 1857, 1859 (citations omitted). When a case presents a new context, a Bivens remedy will be unavailable if there are "special factors counselling hesitation" against a remedy. Id. at ___, 137 S. Ct. at 1857 (citations omitted). The Supreme Court has implied a Bivens remedy in only three circumstances: a Fourth Amendment claim against FBI agents for handcuffing a man in his home without a warrant; a Fifth Amendment due process claim against a Congressman for discriminatorily terminating a female staffer; and an Eighth Amendment claim against prison officials for failing to provide adequate medical treatment. See Bivens, 403 U.S. 388; Davis v. Passman, 442 U.S. 228 (1979); Carlson v. Green, 446 U.S. 14 (1980). The Supreme Court has never approved a Bivens action outside of these three cases and has twice denied procedural due process Bivens actions. See FDIC v. Meyer, 510 U.S. 471, 473–74 (1994) (against a federal agency for wrongful termination); Schweiker v. Chilicky, 487 U.S. 412, 414 (1988) (against Social Security officials for denied benefits). However, because Plaintiff's claim is due to be dismissed for lack of standing and ripeness, the Court need not and does not address the issue of whether a Bivens remedy is available. See, e.g., Wood v. Moss, 572 U.S. ___, ___, 134 S. Ct. 2056, 2066 (2014) (disposing of a Bivens claim on constitutional grounds without deciding the Bivens issue).

not matured into any cognizable harm to Plaintiff and are incapable of doing so until the time of Plaintiff's release, if at all.

Looking to the fitness for judicial review and the hardship to Plaintiff, this case is unfit for review because of the uncertainty of Plaintiff's claimed injury, which rests on an event that has not come to pass—his being denied accident compensation. Atlanta Gas Light Co. v. Federal Energy Regulatory Comm'n, 140 F.3d 1392, 1404 (11th Cir. 2001) (claim not fit for review "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" (quoting Texas v. United States, 523 U.S. 296, 300 (1998))). Additionally, Plaintiff will not suffer hardship if the Court dismisses his case at the present time because he is not yet eligible for accident compensation and will not be so until his release. See Pittman v. Cole, 267 F.3d 1269, 1278 (11th Cir. 2001) (hardship "not likely to be present where a plaintiff 'will have ample opportunity later to bring [his] legal challenge at a time when harm is more imminent and more certain'" (quoting Ohio Forestry Ass'n Inc. v. Sierra Club, 523 U.S. 726, 734 (1998))). To continue the access-to-courts analogy from above, Plaintiff's due process claims against Defendant will not become ripe until his IACP claim is either denied or dismissed on account of Defendant's alleged due process violations. See, e.g., Carter v. Cummings, No. 16-CV-55-BBC, 2017 WL 519283, at *6–7 (W.D. Wis. Feb. 8, 2017); Lynch v. Barrett, No. 09-CV-00405-JLK-MEH, 2010 WL 3938359, at *5–6 (D. Colo. Oct. 5, 2010). Therefore, the Court should **DISMISS** Plaintiff's cause of action because it is not currently ripe for adjudication.

In finding that Plaintiff lacks standing and ripeness to bring his due process claims now, the Court does not indifferently discount the severe pain and suffering Plaintiff has experienced as a result of the EZ-GO Cart accident. But any redress for that injury lies in the IACP, not in a due process Bivens action against Defendant. This Court, as one of limited jurisdiction, must

14

distinguish between the significant injury Plaintiff suffered from the accident and the lack of injury he has currently suffered from Defendant's alleged malfeasance following that accident. From this perspective, this case is due to be dismissed, not because Plaintiff has not been injured, but because he fails to allege that Defendant's actions or omissions have caused him any direct injury at this time.

### III.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[11] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[11] A certificate of appealability is not required in this Bivens action.

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal. The Court **DISMISSES as moot** Plaintiff's Motion for Court Filings. (Doc. 7.)

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. However, Plaintiff may amend the Complaint to cure any deficiencies noted in this Report and Recommendation. See Fed. R. Civ. P. 15. Should Plaintiff seek to amend the Complaint, Plaintiff must file the amended complaint within **fourteen (14) days** from the date of this Report and Recommendation.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 17th day of April, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA